1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  KERRI ALTHOFF-GROMER,                 No.  2:18-cv-00082-KJN

12               Plaintiff,

13       v.                               ORDER

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                 Defendant.
16

17

18          Plaintiff Kerri Althoff-Gromer seeks judicial review of a final decision by the

19  Commissioner of Social Security ("Commissioner") denying her applications for Disability

20  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI,

21  respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff

22  principally argues that the decision of the administrative law judge ("ALJ") is based upon legal

23  error and is not supported by substantial evidence in the record.  (See ECF No. 16.)  The

24  Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment.  (ECF

25  No. 25.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 26.)

26  _____

27  [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) and both parties
    voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF
28  Nos. 7, 8.).

                                       1

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the Commissioner's final decision.

I.    BACKGROUND

Plaintiff was born on January 15, 1964; has completed her GED, bachelor's degree, and addiction-counseling certificate; and previously worked as a substance abuse counselor and provider relations representative.[2]  (Administrative Transcript ("AT") 37, 537, 1140.)  On January 27, 2005, the Social Security Administration ("SSA") found plaintiff disabled.  (AT 156.)  On April 18, 2013, the SSA determined that plaintiff was no longer disabled as of April 1, 2013, and ceased her disability benefits.  (AT 156, 148.)

On May 28, 2013, plaintiff requested reconsideration, alleging she was disabled due to psychosis, hypothyroidism, bipolar disorder, attention deficit disorder, major depression, anxiety, rheumatoid arthritis, pericarditis, chronic insomnia, knee problems, migraines, and restless leg syndrome.  (AT 183, 590.)  Pursuant to plaintiff's request, ALJ David Buell conducted a hearing on October 16, 2014.  (AT 47-108.)  ALJ Buell issued a decision on January 20, 2015, determining that plaintiff's disability ended on April 1, 2013, and that she had not become disabled again since that date.  (AT 156-67.)  However, the Appeals Council found error and remanded the case for further proceedings.  (AT 175-77.)

Then, on January 13, 2016, ALJ Jean Kerins conducted a subsequent hearing in this matter.  (AT 109-47.)  Thereafter, ALJ Kerins issued a decision dated April 7, 2016, determining that plaintiff's disability ended on April 1, 2013, and that she had not become disabled again since that date.  (AT 24-39.)  This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on November 13, 2017.  (AT 1-4.)  Plaintiff filed this action on January 15, 2018, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.     ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly weighed the medical opinion evidence; (2) whether the ALJ improperly discounted plaintiff's credibility; (3) whether the ALJ's residual functional capacity ("RFC") determination was without substantial evidentiary support; and (4) whether the ALJ failed to consider plaintiff's eligibility for a closed period of disability.[3]

III.    LEGAL STANDARDS

A.     Continuing Benefits

Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

Once an individual is awarded benefits under either program, the SSA periodically reviews whether the beneficiary continues to be disabled.  See 20 C.F.R. §§ 404.1594(a) and 416.994(a).  A parallel multistep sequential evaluation governs the determination of continuing disability under both programs.  See 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5).  There is an additional preliminary step for DIB claims.  Otherwise, the process is the same under each program and summarized below:

>Preliminary step (for DIB only):  Is the claimant engaging in substantial gainful activity?  If so, the claimant's disability has ended.  If not, proceed to step one.

>Step one:  Does the claimant have an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If so, the claimant's disability continues.  If not, proceed to step two.

_____

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

Step two:  Has there been medical improvement to the claimant's impairment(s)?  If so, proceed to step three.  If not, proceed to step four.

Step three:  Is the medical improvement related to the claimant's ability to work?  If so, proceed to step five.  If not, proceed to step four.

Step four:  Do any of the exceptions in group one or two as enumerated in 20 C.F.R. §§ 404.1594(d) and (e) and 416.994(b)(3) and (b)(4) apply?  If an exception from group one applies, proceed to step five.  If an exception from group two applies, the claimant's disability has ended.  If no exceptions apply, the claimant's disability continues.

Step five:  Are all of the claimant's current impairments severe in combination?  If so, proceed to step six.  If not, the claimant's disability has ended.

Step six:  Does the claimant have the RFC to perform past relevant work?  If so, the claimant's disability has ended.  If not, proceed to step seven.

Step seven:  Does the claimant have the RFC to perform any other work?  If so, the claimant's disability has ended.  If not, the claimant's disability continues.

See 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5).

The claimant bears "the burden of showing a medically determinable impairment." Bowen v. Yuckert, 482 U.S. 137, 146 (1987); see also 42 U.S.C. § 423(d)(5)(A).  The Commissioner is responsible for establishing the claimant's RFC.  See 20 C.F.R. §§ 404.1545 and 416.945.

B.    Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

"[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947). At the same time, in the context of Social Security appeals, "[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion. It is proper for us to read the . . . opinion, and draw inferences . . . if those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

IV.    DISCUSSION

A.    Summary of the ALJ's Findings

ALJ Kerins evaluated plaintiff's ongoing entitlement to DIB and SSI pursuant to the Commissioner's standard multistep analytical framework. At the preliminary step relevant to ongoing entitlement to DIB, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 1, 2013, the date plaintiff's disability ended. (AT 27.)

At step one, the ALJ concluded that the medical evidence established that, as of April 1, 2013, plaintiff had the following medically determinable impairments:

> affective mood disorder; anxiety disorder; attention deficit disorder; psychosis; bipolar II disorder; history of knee surgery; history of sacroiliitis; degenerative changes at the pubic symphysis and sacroiliac joints; bilateral osteoarthrosis of the hip joint; lumbar facet syndrome status post remote fracture; lumbar degenerative disc disease; status-post hernia repair; rheumatoid arthritis; fibromyalgia; unspecified inflammatory polyarthropathy; and chronic pain.

(AT 27.) However, the ALJ concluded that "[s]ince April 1, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id.)

////

////

////

5

At step two, the ALJ determined that "medical improvement had occurred as of April 1, 2013," and "the impairments present at the time of the CPD[4] had decreased in medical severity to the point where the claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: is limited to simple repetitive tasks consistent with unskilled work; and is limited to non-public contact."  (AT 30.)

At step three, the ALJ found that plaintiff's "medical improvement is related to her ability to work because it resulted in an increase in [her RFC]."  (AT 31.)  Thus, the ALJ proceeded to step five.

At step five, the ALJ concluded that plaintiff "continued to have a severe impairment or combination of impairments," beginning on April 1, 2013.  (AT 31.)  Before proceeding to the next step, the ALJ determined that "[b]eginning on April 1, 2013, based on the current impairments, the claimant has had the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except [that she] is limited to simple repetitive tasks consistent with unskilled work; and is limited to non-public interaction."  (Id.)

At step six, the ALJ concluded that "[b]egining on April 1, 2013, the claimant has been unable to perform any past relevant work."  (AT 37.)

At step seven, the ALJ found that, in light of plaintiff's age, education, work experience, current RFC, and the testimony of a vocational expert, plaintiff "has been able to perform a significant number of jobs in the national economy."  (AT 37.)  Accordingly, the ALJ concluded that plaintiff's "disability ended on April 1, 2013, and [she] has not become disabled again since that date."  (AT 39.)

B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.    *Whether the ALJ improperly weighed the medical opinion evidence*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,

---

4 "CPD" stands for "comparison point decision" and it is the most recent favorable medical decision finding that plaintiff was disabled.  Here, the CPD was dated January 27, 2005.  (AT 26.)

a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) there are contradictory opinions in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

i. **Maninder Powar, M.D. – treating physician**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Powar's uncontroverted opinions. (ECF No. 16 at 25-29.) Even assuming, without deciding, that clear and convincing reasons were required to reject Dr. Powar's opinions, the ALJ has met that standard.

////

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

Dr. Powar was plaintiff's primary care physician and she provided several conclusory opinions regarding plaintiff's limitations. In two fill-in-the-blanks medical source statements in 2015, Dr. Powar opined that plaintiff was so severely limited by her impairments—rheumatoid arthritis, polyarthropathy, osteoarthrosis, bipolar disorder, and attention deficit disorder—that she could not perform any full-time work at any exertional level. (See AT 1124-25, 1256.)

Specifically, in a March 5, 2015 medical source statement, Dr. Powar indicated that plaintiff was disabled since May 2013. (AT 1124-25.) She opined that during an eight-hour workday: plaintiff could sit for 30-60 minutes and stand/walk for 10 minutes; must lie down or elevate her legs for five to six hours; could frequently and occasionally lift no more than two pounds; and could reach/grasp, handle, feel, and manage fine finger manipulation for 10-15 minutes and push/pull for five minutes—but was unable to perform any of these activities with her hand for any period of time without resting. (Id.) Dr. Powar indicated that her opinion was based on plaintiff's multiple joint pain and the fact that plaintiff was seeing a rheumatologist and pain specialist. (AT 1124.) Dr. Powar also noted that plaintiff's hand limitations were specifically based upon clinical findings that demonstrated increased ESR and CRP.[6] (Id.)

Then, in a November 12, 2015 medical source statement, Dr. Powar concluded that plaintiff was disabled since 2012. (AT 1256.) She opined that during an eight-hour workday: plaintiff could lift and carry no more than three pounds for about three hours; could sit for 40 minutes at a time and stand and/or walk for five minutes at a time; and would have to lie down or change position for the remainder of the day because of her pain. (AT 1256.)

In nearly-identical letters, on May 12, 2014, and on August 10, 2016, Dr. Powar observed in a conclusory fashion that "at the present time it does not appear that [plaintiff] will be able to find any meaningful employment, given her current medical issues and multiple medications that she is on." (AT 705, 1340.) In plaintiff's medical records on March 5, 2015, Dr. Powar similarly

---

[6] According to the Mayo Clinic, "[p]eople with rheumatoid arthritis often have an elevated erythrocyte sedimentation rate (ESR, or sed rate) or C-reactive protein (CRP), which may indicate the presence of an inflammatory process in the body." *Rheumatoid arthritis*, MAYO CLINIC, (Mar. 15, 2019, 1:45 PM) https://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/diagnosis-treatment/drc-20353653.

concluded without explanation that "[i]t is highly doubtful that [plaintiff] can be gainfully employed given her multiple medical issues and the medications she is on." (AT 1132.)

On May 20, 2014, Dr. Powar filled out a largely check-box form for the California Department of Motor Vehicles and indicated that plaintiff had a significant limitation in the use of her lower extremity due to osteoarthritis in her knee. (AT 417-18.)

The ALJ gave little weight to these opinions because they are "not supported by the clinical and diagnostic findings" (i.e., the objective medical evidence); "a determination as to whether the claimant is 'unable to work' is an opinion on an issue reserved to the Commissioner;" and "Dr. Powar is not a vocational expert, and therefore [her] statements [regarding plaintiff's ability to work] are outside the area of [her] expertise." (AT 34.)

a. OBJECTIVE MEDICAL EVIDENCE

The ALJ supported her conclusion that Dr. Powar's opinions were not supported by clinical and diagnostic findings with an extensive discussion of plaintiff's medical records and physical impairments. (See AT 33-35.) Specifically, the ALJ cited to objective evidence in the record that demonstrated that plaintiff's physical impairments had improved with medication and treatment. (AT 33.)

For example, the ALJ discussed plaintiff's hernia surgery that occurred "on or just prior to April 2013," and accurately pointed out that plaintiff was doing well after the treatment, as reflected in the surgeon's postoperative notes. (AT 33, 679-81.)

Regarding plaintiff's chronic knee pain, the ALJ observed that plaintiff

> was assessed with osteoarthritis of the left knee and status-post ACL reconstruction from 1998. . . . [and] underwent a minimally invasive left knee replacement on July 14, 2014. Subsequently, treatment notes three weeks later [by Dr. James Mamone, plaintiff's surgeon,] indicate that range of motion strengthening had been continuing to improve with physical therapy. Treatment notes from November 2014, which was four months after her knee replacement, [show that plaintiff] reported that she was doing well and getting back to normal activities.

(AT 33.) This is an accurate summary of Dr. Mamone's treatment notes, where he recorded that plaintiff "was progressing appropriately from her surgery." (See AT 891, 1102-03, 1111.)

////

9

As to plaintiff's back pain, the ALJ noted that February 2015 x-rays of plaintiff's lumbar spine revealed "[s]table compression fracture deformity of L1 due to old injury. Otherwise unremarkable study."[7] (AT 33, 1131.) Regarding plaintiff's joint pain, the ALJ pointed to October 2015 findings from nerve conduction tests of the right upper limb and bilateral lower limbs that revealed unremarkable findings within normal limits. (AT 33, 1328.)

Additionally, the ALJ observed that June 2015 treatment notes from plaintiff's rheumatologist indicated that medication (i.e., methotrexate) has helped with plaintiff's joint pain. (AT 33, 1286.) The ALJ also highlighted ambiguity in the rheumatologist's objective findings—while plaintiff "had difficulty lifting her arm above her head [she] also . . . had good range of motion in her shoulders"—that belied the severe limitations opined by Dr. Powar. (AT 33, 1042, 1054, 1079, 1089, 1130.)

Moreover, the ALJ relied on Dr. Powar's January 2015 records which demonstrated plaintiff was stable overall and doing well on her current treatment regimen. (AT 33, 1119.) Dr. Powar's treatment notes also revealed that plaintiff denied any joint pain, muscle pain, or neck pain on several of her visits. (See, e.g., AT 836, 887, 1082.) Further, even when plaintiff complained of joint or back pain, Dr. Powar noted the conditions were "chronic and stable." (See, e.g., AT 1082, 1120.)

What is more, the ALJ observed that plaintiff's

> physical impairments have been mostly controlled and stable with the prescribed treatment, which consisted mainly of medications, injections, and outpatient visits with various providers. Accordingly, [her] allegations regarding the severity of her symptoms and limitations are not fully consistent with the evidence, as her allegations are greater than expected in light of the objective evidence of record. Overall, the treatment records do not support her allegation that she may need to lie up to four hours a day.

---

[7] There is some ambiguity as to whether these x-ray results were from February 2015, as this identical note appears repeatedly in records, dating back to December 2013. (See AT 1062, 1068, 1080, 1090, 1110, 1131.) However, the court defers to the ALJ's reasonable resolution of any ambiguity in the medical record. See Edlund, 253 F.3d at 1156. Even assuming, without deciding, that the ALJ improperly relied on this single piece of evidence, any error is harmless because the ALJ's conclusions are otherwise supported by substantial evidence in the record. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

(AT 34.)  While this paragraph explicitly pertains to the ALJ's analysis of plaintiff's credibility, it also pertains to the ALJ's rejection of Dr. Powar's opinions.  See Magallanes, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").  Indeed, as with plaintiff's subjective complaints, the treatment records do not support the extreme limitations opined by Dr. Powar—such as plaintiff needing to lie down most of the day and only having the capacity to stand for less than an hour and walk for 10 minutes or less.

Nevertheless, plaintiff contends that the ALJ erred by failing to discuss medical evidence from plaintiff's rheumatologist that supports Dr. Powar's opinions.  (See ECF No. 16 at 28.)  The ALJ committed no such error because she clearly considered the entire record (see AT 31-37), but only discussed evidence that she considered probative.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (when "interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence' . . . the ALJ is not required to discuss evidence that is neither significant nor probative").

When the ALJ's decision is founded upon a reasonable interpretation of the record and supported by substantial evidence—as it is here—the court may not remand in favor of plaintiff's preferred interpretation of the record.  See Edlund, 253 F.3d at 1156; Tommasetti, 533 F.3d at 1038.

b.    DETERMINATIONS OF DISABILITY AND ABILITY TO WORK

The determination of whether a claimant meets the statutory definition of disability for the purposes of DIB or SSI is reserved to the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  To the extent that Dr. Powar's various conclusory statements that plaintiff is unable to work are determinations of disability, they are not dispositive, and the ALJ properly gave them no weight.  (See AT 417-18, 705, 1340, 1124-25, 1256.)

Similarly, the ALJ appropriately rejected Dr. Powar's conclusory findings that plaintiff would be unable to find meaningful employment or be gainfully employed, as outside the scope of Dr. Powar's expertise.  (AT 34, 705, 1332, 1340.)  Instead, the ALJ reasonably relied upon the testimony of a vocational expert when determining whether there were jobs in the national

11

1    economy that plaintiff could perform.  (See AT 37-38, 138-46.)

2              c.    DAILY ACTIVITIES

3         The ALJ also observed that despite plaintiff's allegations of "extreme pain, the record

4    indicates that [she] could still adequately perform mental and physical activities."  (AT 32.)  The

5    ALJ pointed to statements from plaintiff and her husband that support this conclusion.  (See AT

6    28.)  Specifically, plaintiff reportedly cooks; occasionally vacuums and does laundry; plays the

7    piano; goes to karaoke; is involved in activities at the clubhouse in her senior complex; and uses

8    the pool at night for exercise.  (See AT 49-103, 111-38, 202-05, 350-58.)  Furthermore, the ALJ

9    accurately noted that "medical records since April 1, 2013 do not indicate that the claimant was

10   using any assistive device [to walk] with any regularity."  (AT 28.)

11        While the ALJ did not explicitly conclude that these activities undermined Dr. Powar's

12   opinions, the ALJ did conclude that these activities were not consistent with plaintiff's allegations

13   of severe limitations.  (See AT 28, 32.)  Because Dr. Powar's opinions are based in significant

14   part upon plaintiff's subjective complaints of pain and limitation, the court logically infers that

15   the ALJ also determined that these activities undermined the extreme limitations opined by Dr.

16   Powar.  See Magallanes, 881 F.2d at 755.

17        Accordingly, the court finds that the ALJ provided clear and convincing reasons,

18   supported by substantial evidence, for discounting Dr. Powar's opinions.

19              ii.    **Robert L. Morgan, Ph.D. – examining psychologist**

20        Plaintiff also argues that the ALJ failed to provide "specific and legitimate reasons for

21   rejecting the controverted opinion of Dr. Morgan," who performed a psychological evaluation of

22   plaintiff in March of 2015.  (ECF No. 16 at 30.)  This argument is unavailing.

23        In his evaluation, Dr. Morgan opined that plaintiff had marked limitations in maintaining

24   activities of daily living, social functioning, persistence, and pace; and moderate limitations in

25   maintaining concentration.  (AT 36, 1144-45.)  Dr. Morgan further concluded that plaintiff was

26   markedly restricted by her mental impairments in many areas related to functioning in the

27   workplace.  (AT 1146.)

28   ////

The ALJ assigned little weight to Dr. Morgan's opinion for the following reasons:

> First, Dr. Morgan's significant limitations drastically underestimate the claimant's mental functioning in light of the conservative mental health treatment and the relatively stable symptoms since April 1, 2013 [as evidenced by the objective medical record]. Furthermore, his assessment is not consistent with the paragraph B analysis above, which indicates mild to moderate limitations in the aforementioned areas of mental functioning. Moreover, although Dr. Morgan examined the claimant, it does not appear that he had a treating relationship with [her]. Lastly, it is unclear whether he has an awareness of all the evidence in the record, and whether he has an understanding of social security disability programs and evidentiary requirements to determine whether Listing 12.0[4] is met.

(AT 36.) The ALJ's conclusion is supported by substantial evidence in the record.

### a. OBJECTIVE MEDICAL EVIDENCE

In determining that the objective evidence did not support Dr. Morgan's opinion, the ALJ pointed to records demonstrating that plaintiff's mental health treatment was primarily limited to psychiatric medications and outpatient visits with plaintiff's primary care providers. (See AT 35, 681-84, 835-40, 875-81, 885-89, 1069-71, 1081-84, 1091-98, 1118-23, 1132-36, 1212-25, 1259-62, 1266). Importantly, the ALJ observed that the medical records included no psychiatric hospitalizations since April 1, 2013. (AT 35.) The ALJ expressly cited to various entries in the record demonstrating that plaintiff was stable on her medications (AT 878); that a cognitive assessment showed no sign of impairment (AT 1098); and that during a January 6, 2015 visit, plaintiff denied irritability, lack of concentration, feeling blue/down, or feeling hopeless/depressed (AT 1120). The January 6, 2015 treatment note also revealed that plaintiff's psychiatric symptoms were well-controlled with her current medication regimen. (AT 1119.)

### b. PARAGRAPH B ANALYSIS

When discounting Dr. Morgan's opinion, the ALJ also cited to her own unchallenged step one findings that plaintiff's impairments did not "meet or medically equal the criteria of Listings 12.02, 12.03, 12.04, and 12.06" because she did not meet the paragraph B criteria. (AT 28.) The paragraph B criteria require a finding that plaintiff's "mental impairments . . . result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistent or

pace; or repeated episodes of decompensation, each of extended duration."[8]  (AT 28.)

The ALJ's unchallenged paragraph B analysis is relevant here because, as the ALJ pointed out, it is inconsistent with Dr. Morgan's opinion that plaintiff had several marked limitations, and because it is supported by the record.  (See AT 28-29, 36, 49-103, 111-38, 202-05, 350-58.)

Specifically, the ALJ concluded that plaintiff had mild limitations in the area of activities of daily living, because plaintiff's own testimony demonstrated that her daily activities included spending time on the computer; talking to her family; cooking; occasionally vacuuming and doing laundry; going to karaoke; and being involved in clubhouse activities.  (AT 28, 202.)

As to the area of social functioning, the ALJ concluded that plaintiff had moderate limitations because she is "capable of maintaining interaction with individuals in a variety of situations independently, appropriately, effectively, and on a sustained basis despite her mental impairments."  (AT 28.)  The ALJ supported this conclusion by pointing out that plaintiff is married and living with her husband without reporting significant problems; medical records reveal she is "able to communicate effectively with various medical providers/evaluators regarding her medical conditions;" and plaintiff "testified on her own behalf and adhered to proper hearing decorum."  (AT 28, 49-103, 202-05, 1138-43.)

As to the area of concentration, persistence or pace, the ALJ concluded that plaintiff had moderate limitations, based on plaintiff's ability to adequately provide information regarding her medical, work, and legal history at numerous examinations and hearings, despite her impairments.  (See, e.g., AT 29, 49-103, 202-05, 1138-43.)

c.    NATURE OF RELATIONSHIP AND LACK OF KNOWLEDGE

Additionally, the ALJ appropriately considered, as one factor among many, the nature and extent of Dr. Morgan's relationship with plaintiff—which consisted of a single visit—when rejecting his opinion.  See 20 C.F.R. § 404.1527.

---

[8] The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations."  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

Similarly, the ALJ reasonably discounted Dr. Morgan's opinion, in part, because it is unclear whether he was aware of plaintiff's objective medical history. Dr. Morgan's opinion does not contain any mention or review of plaintiff's medical records, and the "medical history" section of his opinion (AT 1140) refers to plaintiff's self-report of her history of present illness. (AT 1137-49.)

Thus, Dr. Morgan's opinion relies in large part upon plaintiff's subjective complaints and, as explained herein, the ALJ reasonably discounted plaintiff's credibility. Accordingly, the ALJ reasonably found that Dr. Morgan's reliance on plaintiff's subjective complaints, without a clear understanding of her objective medical history, undermined his conclusions.

Likewise, it was proper for the ALJ to question Dr. Morgan's understanding of the requirements for DIB and SSI when discounting his opinion because the determination of disability is governed by specific rules and reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Even assuming, without deciding, that this reason was improper, it is not grounds for remand because the ALJ provided several other specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Morgan's opinion. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless").

### iii. **Dr. Silvia Torrez, Psy.D. and state agency psychologists**

Plaintiff also argues that the ALJ committed error by giving partial weight to the opinions of Dr. Torrez and state agency psychologists. Specifically, plaintiff maintains that the ALJ "fashioned a mental RFC based on her lay interpretation of the psychiatric evidence" since the ALJ discounted, in whole or in part, the opinions of Dr. Morgan, Dr. Torrez, and state agency psychologists. (ECF No. 16 at 30.) This argument is not persuasive.

On February 19, 2013, examining psychologist, Dr. Torrez opined that plaintiff had none to mild limitations in mental functioning. (AT 534-41.) Then, on April 6, 2013 and August 9, 2013, the reviewing state agency psychologists similarly opined that plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. (AT 580-90, 724-35.)

15

The ALJ gave partial weight to the opinions of Dr. Torrez and the state agency psychologists because the ALJ determined that the record and mental impairment analysis supported a finding that plaintiff had moderate limitations in the areas of social functioning and concentration, persistence or pace—more severe limitations than what these providers had opined. (AT 28-29, 36). As explained herein, this conclusion is supported by substantial evidence in the record. (See AT 49-103, 111-38, 202-05, 350-58, 1138-43.)

Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for giving these opinions partial weight. Indeed, this portion of the ALJ's decision clearly demonstrates that she did not completely discredit plaintiff's allegations, but rather conducted a thorough analysis of the entire record.[9]

2.      *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff further contends that the ALJ did not provide clear and convincing reasons for discrediting plaintiff's subjective complaints of pain and mental impairments. (See ECF No. 16 at 34-36.)

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

---

[9] Plaintiff additionally argues the court should consider the medical source statement by the practitioners at the Fair Oaks Psychiatric Associates dated November 9, 2016. (See ECF 16 at 28-29.) The court declines to consider the opinion because it is dated after the relevant review period and does not specify whether the opinion relates to the treatment plaintiff received during the period at issue. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161-63 (9th Cir. 2012) (a reviewing court must consider new evidence submitted to the Appeals Council "so long as the evidence relates to the period on or before the ALJ's decision").

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Barnhart, 278 F.3d at 958-59 (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of constant physical pain, manic episodes, hallucinations, anxiety, and depression. Indeed, the ALJ limited plaintiff to light work and simple repetitive tasks, consistent with unskilled work and non-public interaction. (AT 31.)

However, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

### i. **Objective medical evidence**

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir.

17

2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).

Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ concluded that plaintiff's "examination findings, the objective medical evidence, the reports of symptoms, reports of limitations, and the types of treatment she received [are] not consistent with the degree of limitations she alleges." (AT 32.) Further, the ALJ found that the objective evidence undermined the credibility of plaintiff's subjective allegations of total disability because it revealed that "her physical and mental symptoms were relatively stable and controlled with the prescribed treatment regimen." (Id.) As detailed herein, substantial evidence in the record supports these conclusions.

### ii. **Conservative treatment**

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Regarding plaintiff's mental condition, the ALJ determined that "[t]he lack of more consistent aggressive mental health treatment suggests [that] the claimant's alleged mental symptoms and limitations are not as severe as she alleged." (AT 35.) This determination is supported by substantial evidence. Plaintiff's mental health treatment was largely limited to outpatient visits with her primary care physician and effective psychiatric medications. (See AT 681-84, 835-40, 875-81, 885-89, 1069-71, 1081-84, 1091-98, 1118-23, 1132-36, 1212-25, 1259-62, 1266.)

### iii. **Condition can be controlled with medication**

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin.,

439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  As detailed herein, the ALJ properly concluded that plaintiff's physical impairments had been controlled and stable with medications, injections, and outpatient care.  (AT 34.)  Notably, plaintiff's primary physician, Dr. Powar, noted that plaintiff's musculoskeletal, neurological, and psychiatric symptoms were "chronic and stable."  (AT 836, 1082, 1120.)  Plaintiff was also noted to be stable on her medications for attention deficit disorder, depression, and insomnia.  (See AT 878, 1119.)

iv.     **Daily activities**

Substantial evidence supports the ALJ's finding that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms and limitations.  (AT 28, 32.)

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

The ALJ concluded that despite plaintiff's allegations of "manic episodes and extreme pain, the record indicates that [she] could still adequately perform mental and physical activities."  (AT 32.)  The ALJ's conclusion is supported by plaintiff's own testimony and self-reported activities, which the ALJ documented earlier in her decision (AT 28)—namely that plaintiff cooks; vacuums; does laundry; plays the piano; goes to karaoke; is involved in activities at the clubhouse in her senior complex, and uses the pool at night for exercise.  (See AT 49-103, 111-

1  38, 202-05, 350-58.)

2       To be sure, the record also contains some contrary evidence—such as plaintiff

3  experiencing panic attacks, sleep disturbance, and mood swings (AT 350-58, 877, 1082)—

4  suggesting that plaintiff's activities are more limited.  However, it is the function of the ALJ to

5  resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported

6  by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming

7  ALJ's credibility determination even where the claimant's testimony was somewhat equivocal

8  about how regularly she was able to keep up with all of the activities and noting that the ALJ's

9  interpretation "may not be the only reasonable one").  As the Ninth Circuit explained:

10          It may well be that a different judge, evaluating the same
            evidence, would have found [the claimant's] allegations of
11          disabling pain credible.  But, as we reiterate in nearly every
            case where we are called upon to review a denial of benefits,
12          we are not triers of fact.  Credibility determinations are the
            province of the ALJ. . . . Where, as here, the ALJ has made
13          specific findings justifying a decision to disbelieve an
            allegation of excess pain, and those findings are supported by
14          substantial evidence in the record, our role is not to second-
            guess that decision.
15

16  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

17              v.    **Personal observations at hearing**

18       Although the ALJ's observations of a plaintiff at the hearing may not form the sole basis

19  for discrediting her testimony, such observations may be used in the overall credibility evaluation.

20  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.

21  1985); SSR 96–7p, at *8.  Here, the ALJ observed that plaintiff "was able to adequately provide

22  information regarding her medical history, employment history, and personal history at the

23  administrative hearing."  (AT 32, 111-38.)  The ALJ properly considered her own observations as

24  one reason among many for discounting plaintiff's credibility.

25          3.     *Whether the ALJ's RFC determination was without substantial evidentiary*

26                 *support*

27       Plaintiff also asserts that the ALJ interpreted "raw medical data" to determine plaintiff's

28  physical RFC and improperly "fashioned a mental RFC based on her lay interpretation of the

psychiatric evidence."  (ECF No. 16 at 26-27, 30).  This argument is not well-taken.

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence.  20 C.F.R. § 404.1545(a)(1).  "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).  The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment.  See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

For the reasons discussed herein, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility and properly fashioned an RFC based upon a review of the record as a whole.  Indeed, the ALJ not only exhaustively considered plaintiff's symptoms, objective medical evidence, and opinion evidence within the appropriate time period, but also considered medical evidence prior to April 1, 2013, "to view the record in the light most favorable" to plaintiff.  (AT 31-37.)

4.  *Whether the ALJ failed to consider plaintiff's eligibility for a closed period of disability*

Finally, plaintiff argues that the ALJ failed to consider plaintiff's eligibility for a closed period of disability based on her left knee impairment.  (ECF No. 16 at 23.)  This argument is unavailing.

A closed period of disability is a period of disability with a definite beginning and ending date for a continuous period of not less than 12 months.  See 20 CFR §§ 404.320, 416.330, 416.335.  Here, the ALJ explicitly considered a closed period of disability and concluded that plaintiff "had not been deprived of the ability to perform work subject to the [RFC] assessed by this decision for any 12-month period since April 1, 2013."  (AT 37.)  As detailed herein, the objective medical evidence in the record detailing that plaintiff's conditions were controlled with

treatment and medication supports this conclusion.

V.     CONCLUSION

       For the foregoing reasons, IT IS HEREBY ORDERED that:

       1.     Plaintiff's motion for summary judgment (ECF No. 16) is DENIED.

       2.     The Commissioner's cross-motion for summary judgment (ECF No. 25) is
              GRANTED.

       3.     The final decision of the Commissioner is AFFIRMED, and judgment is entered
              for the Commissioner.

       4.     The Clerk of Court shall close this case.

       IT IS SO ORDERED.

Dated:  March 22, 2019

                                                    _Kendall J. Newman_
                                                    KENDALL J. NEWMAN
                                                    UNITED STATES MAGISTRATE JUDGE

14